CASSIE LEE BUCK, EMPLOYEE v. PROCTER & GAMBLE MANUFACTURING COMPANY, EMPLOYER: SELF-INSURER COMMON DEFENDANT

No. 8010IC817

(Filed 19 May 1981)

**Master and Servant § 65.2— back injury — causal connection between injury and accident — sufficiency of evidence**

There was sufficient competent evidence to support the conclusion of the Industrial Commission that plaintiff sustained an injury by accident arising out

of and in the course of her employment with defendant which resulted in a fifteen percent permanent partial disability of the back where an expert medical witness expressed an opinion, "based on reasonable medical certainty," that plaintiff's disc defect could have been caused by her fall at work and that the defect also could have been the result of an aggravation, caused by the fall, of a preexisting back condition.

APPEAL by defendant from the North Carolina Industrial Commission opinion and award of 5 March 1980. Heard in the Court of Appeals 10 March 1981.

The Full Commission affirmed the opinion and award filed 27 April 1979, wherein the deputy commissioner concluded that plaintiff had sustained an injury by accident arising out of and in the course of her employment with defendant which resulted in a fifteen percent permanent partial disability of the back entitling her to compensation at the rate of $80.00 per week for forty-five weeks.

The following evidence, in pertinent part, was presented at the hearing held before the deputy commissioner to determine the compensability of plaintiff's claims against her former employer. Plaintiff slipped and fell on some oily stairs at defendant's plant while she was fulfilling her normal work duties as a salter cooler technician on 21 September 1975.[1] She testified that her back became sore, but the pain was not severe. She, however, continued to experience sharp pains in her back whenever she attempted to straighten up after sitting down during the next few months. She stated that:

> [f]rom the time I fell and afterwards as I sat down, I felt the sharp pain in my back, tried to straighten up and move it on out after a few seconds. Any time I tried to do any work, even around my house or around the yard, I could tell a difference. And that was the biggest thing I could tell, a big difference. Prior to that time I could do any kind of work. I never had anything to bother me.

Thus, in December, she went to see her family doctor, Dr. Joseph M. Ward, about some pain she was having in the back of

---

1. A former co-employee of plaintiff at defendant's plant corroborated her testimony about the slip and fall at work. Further facts concerning the incident are omitted because defendant has conceded any issue regarding the actual occurrence of the accident in September 1975.

her leg. She said that he told her that she might have a pinched nerve or rupture.

Dr. Ward testified that plaintiff had a prior medical history of back discomfort. Specifically, some x-ray reports taken in 1970 showed that plaintiff had a mild narrowing of the L-4 and L-5 interspaces in her back. Dr. Ward concluded that this narrowing "meant Mrs. Buck would likely have disc trouble." Dr. Ward further testified that he next saw plaintiff on 4 September 1975. During this visit, she mentioned lower back pain and said that she had had back trouble off and on "all [her] life." Dr. Ward's diagnosis on 4 September 1975 was acute recurrent low back syndrome. Dr. Ward again examined plaintiff in December 1975 (after the accident) with regard to her complaint about radicular pain in the area of her thighs. He concluded that her problem was due to "radicular syndrome pressure on the nerve roots causing her to have pain in the lower extremities" and that this symptom was "more suggestive in regard to disc trouble." On cross-examination, Dr. Ward stated that plaintiff had a preexisting back condition "to some degree or another" when she started working for defendant in 1974. Nevertheless, he also admitted that he did not know whether or not she aggravated that condition subsequent to her employment.

Dr. Richard Gavigan subsequently treated plaintiff on 12 February 1976 on referral from defendant's plant physician concerning her complaints about involuntary loss of control of urination and a six-month history of pain in her lower back radiating into her right lower extremity. As a medical expert in urology, Dr. Gavigan responded to a hypothetical question that plaintiff's urinary incontinence could have or might have been caused by her slip and fall in 1975.

Dr. Robert L. Timmons, a medical expert in neurosurgery, began treating plaintiff for her back problems in May 1976. His associate, Dr. Hardy, examined plaintiff on 31 March 1976 and performed a myelography on 11 May 1976 which revealed a disc defect between the fourth and fifth lumbar vertebra, L-4, L-5 interspace on both sides. Dr. Timmons concluded that the defect was "most likely" due to a herniated or protruded disc. During the subsequent surgery performed on 17 May 1976, Dr. Timmons noted that the L-4 and 5 disc was protruded under the nerve root.

On direct examination at the hearing, Dr. Timmons testified that plaintiff's fall at defendant's plant could have or might have caused this disc protrusion. On cross-examination, however, he stated that it was equally possible that the defect was caused by a degenerative condition. Nevertheless, on redirect examination, he said that it was probable that the fall of 21 September 1975 could have aggravated that degenerative condition and caused the disc to rupture ultimately. Finally, on recross-examination, Dr. Timmons stated that the fall could have caused the protrusion but that it would not have caused the damage to the disc.

At the conclusion of the hearings, the deputy commissioner awarded plaintiff compensation for the permanent partial disability to her back. The critical findings made by the commissioner to support this award are as follows:

10. Dr. R. L. Timmons expressed an opinion, which was based on reasonable medical certainty, that the plaintiff's defect at the L4-L5, bilateral could or might be the result of the fall on September 21, 1975. It was also the opinion of Dr. Timmons that the fall on September 21, 1975 could have aggravated a pre-existing back condition thereby resulting in the defect at the L4-L5, bilateral.

. . . .

15. There was a showing of an interruption of the plaintiff's regular work routine. The plaintiff did in fact, at the time complained of, sustain an injury by accident arising out of and in the course of her employment.

16. The plaintiff's bladder, leg and back difficulties were the direct and natural result of the injury by accident on September 21, 1975.

17. The plaintiff was out of work and temporarily totally disabled from March 31, 1976 to September 27, 1976, as a result of the injury by accident arising out of and in the course of her employment.

18. The plaintiff sustained a fifteen percent permanent partial disability of the back as a result of the injury by accident arising out of and in the course of her employment.

Defendant took exception to each of these findings and now appeals from the opinion of the Full Commission which, after review of the record, found no reversible error and affirmed the award of the deputy commissioner on 5 March 1980.

*Lanier, McPherson and Miller, by Jeffrey L. Miller, for plaintiff appellee.*

*Maupin, Taylor and Ellis, by Albert R. Bell, Jr., and Jane Fox Brown, for defendant appellant.*

VAUGHN, Judge.

At the outset, we must determine the applicable scope of judicial review on this appeal.[2] G.S. 97-86 states the review standard for awards of the Industrial Commission. The statute provides that such awards "shall be conclusive and binding as to all questions of fact; but either party to the dispute may . . . appeal from the decision of said Commission to the Court of Appeals for *errors of law* under the same terms and conditions as govern appeals from the superior court to the Court of Appeals in ordinary civil actions." (Emphasis added.) G.S. 97-86, in effect, requires appellate courts to limit their review of workers' compensation awards for legal errors to a two-fold determination of whether the Commission's findings are supported by *any* competent evidence and whether its subsequent legal conclusions are justified by those findings. *See Barham v. Food World,* 300 N.C. 329, 266 S.E. 2d 676 (1980); *Walston v. Burlington Industries,* 49 N.C. App. 301, 271 S.E. 2d 516 (1980). Clearly, it is not the function of any appellate court to retry the facts found by the Commission or weigh the evidence received by it and decide anew the issue of compensability of an employee's claim. *Inscoe v. Industries, Inc.,* 292 N.C. 210, 232 S.E. 2d 449 (1977); *Anderson v. Construction Co.,* 265 N.C. 431, 144 S.E. 2d 272 (1965); *see* G.S. 97-86, *supra.* The Supreme Court has recently reiterated these well established restrictions upon the appellate review of such awards in *Morrison v. Burlington Industries:*

> the Industrial Commission has the exclusive duty and authority to find the facts relative to disputed claims and

2. In two recent opinions of the Supreme Court, Justice Carlton has indicated that "the reviewing court should make clear the review standard under which it proceeds" when the appeal concerns the decision of an administrative agency. *Utilities Commission v. Oil Company,* 302 N.C. 14, 273 S.E. 2d 232 (1981); *In Re Savings and Loan League,* 302 N.C. 458, 276 S.E. 2d 404 (1981). Clarification of the scope of review necessarily requires the appellate court to determine, as a preliminary matter, whether the particular agency involved is governed by the Administrative Procedure Act, G.S. Chapter 150A. *Id.* In this case, that Act does not apply because the Industrial Commission is specifically exempted from its coverage. G.S. 150A-1(a).

such findings are conclusive on appeal when supported by any evidence. Moreover, where the evidence before the Commission is such as to permit either one of two contrary findings, the determination of the Commission is conclusive on appeal and the mere fact that an appellate court disagrees with the findings of the Commission is not grounds for reversal.

301 N.C. 226, 232, 271 S.E. 2d 364, 367 (1980). We shall now proceed to address the merits of defendant's appeal in accordance with these sound principles of judicial review.

In the instant case, defendant essentially contends that the Commission committed an error of law in affirming the award because plaintiff did not present sufficient evidence to establish a prima facie case demonstrating her entitlement to compensation. We disagree and affirm the Commission's opinion and award.

It is, of course, true that plaintiff had to prove that she was injured "by accident arising out of and in the course of the employment" with defendant to recover compensation for her alleged disability under the Workers' Compensation Act. G.S. 97-2(6); *Hollar v. Furniture Co.*, 48 N.C. App. 489, 269 S.E. 2d 667 (1980). Since defendant has conceded that plaintiff suffered an accident in the course of her employment, however, the only question raised here is whether plaintiff's injuries did, in fact, arise out of that accident.

The term "arising out of" requires an employee to demonstrate a causal connection between the injury complained of and an accident which occurred in the course of employment. *Barham v. Food World*, 300 N.C. 329, 266 S.E. 2d 676 (1980). The deputy commissioner specifically found, as a matter of fact, that plaintiff established a direct causal link between her bladder, leg and back problems and her slip and fall accident at defendant's plant. Nonetheless, defendant argues that the commissioner's findings cannot be sustained because there was no *competent* expert testimony in the record which established, within the required degree of reasonable probability, that plaintiff's back injuries were caused by the work-related accident of 21 September 1975. Contrary to defendant's contention, however, the commissioner found that Dr. Timmons expressed an opinion, "based on reasonable medical certainty," that plaintiff's disc defect could have been caused by her fall at work and that the defect also could

have been the result of an aggravation, caused by the fall, of a preexisting back condition.[3] Defendant excepted to this finding on the ground that Dr. Timmons' testimony, viewed as a whole, disclosed that his opinion as to the cause of plaintiff's disc defect was based upon mere speculation and not medical probability. Our review of the content of Dr. Timmons' expert testimony compels us to overrule defendant's exceptions to this evidence.

In *Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E. 2d 541 (1964), the Supreme Court held that an expert's opinion that a particular cause "could" or "might" have produced the result indicates that the result is capable of proceeding from the particular cause within the realm of reasonable probability. The Court further stated that the fact finder is not required "to make subtle and refined distinctions" and that it is within his discretion to admit expert testimony whenever "it reasonably appears to him that the expert witness, in giving testimony supporting a particular causal relation, is addressing himself to reasonable probabilities according to scientific knowledge and experience, and the testimony *per se* does not show that the causal relation is merely speculative and mere possibility. . . ." *Id.* at 669, 138 S.E. 2d at 546. Defendant contends that Dr. Timmons' testimony in the instant case *per se* demonstrated the speculative nature of the causal relation between plaintiff's disc injury and the work accident. We cannot agree.

In response to two separate hypothetical questions on direct examination, Dr. Timmons affirmatively stated, as required by *Lockwood v. McCaskill, supra*, that plaintiff's accident at defendant's plant could have caused the disc protrusion that produced the nerve root compression and pain. Though he later testified, on cross-examination, that it was "equally possible" that "the defect was degenerative in nature" and could have been caused by "recurrent and chronic stress," Dr. Timmons never retracted his

---

3. The disc injury would be compensable if either theory of causation were sufficiently established, *i.e.*, that the defect was directly caused by the accident or that the accident materially aggravated a preexisting disease and proximately contributed to the disability. *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743, (1978); *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265 (1951); *Mabe v. Granite Corp.*, 15 N.C. App. 253, 189 S.E. 2d 804 (1972). *See generally* 1 Larson, Workmen's Compensation Law § 12.20 (1978).

prior opinion, based on a reasonable medical certainty, that plaintiff's slip and fall "certainly could have" caused the disc defect. In fact, Dr. Timmons also said, in the course of defense counsel's questioning about the degenerative process, that "nobody knows the cause of degeneration and it of course could be repeated [stress] or chronic trauma that is repeated *or an injury.*" (Emphasis added.)

Defendant, nevertheless, argues that Dr. Timmons admitted that his opinion on causation was not based upon medical probability when he said that "[a]n attempt to determine today that it was the fall or that this degenerative condition existed over a substantial period of time would be mere speculation." This statement, standing alone, is insufficient to show that Dr. Timmons was "testifying in terms of possibilities rather than probabilities." *See Kennedy v. Martin Marietta Chemicals,* 34 N.C. App. 177, 181, 237 S.E. 2d 542, 545 (1977). It seems obvious to us that the doctor was *not* saying that the fall could not have caused the disc protrusion nor was he saying that the protrusion could not have been the result of a degenerative condition. Dr. Timmons was simply stating that he could not choose which of the two, the event of a fall or the existence of a degenerative condition, was the *single* most probable cause without engaging in speculation.[4] Indeed, medical experts are not required to make such a choice in order to render their opinion testimony competent and admissible. In *Lockwood v. McCaskill,* the Court recognized that "[a] result in a particular case may stem from a number of causes." 262 N.C. at 668, 138 S.E. 2d at 545. All that is necessary is that expert express an opinion that a *particular* cause was *capable* of producing the injurious result. *Id.* It is manifest that this requirement was fulfilled in the instant case. For instance, Dr. Timmons proceeded, on redirect examination, to restate his opinion that it was "equally likely or equally probable that the slip and fall on the stairs could or might have caused the disc defect that [he] discovered." Moreover, he also stated "[t]o a reasonable degree of medical certainty" that plaintiff's fall could have (1) made a degenerated disc protrude and caused nerve root pressure and

---

4. We also note that Dr. Timmons further qualified what he meant by "speculation" in his very next sentence: "I think that's speculation on the basis that this is answering a hypothetical question."

pain or (2) aggravated a preexisting degenerative condition and caused the disc to rupture.

This is not, therefore, a case where the record is devoid of a "scintilla of medical evidence that plaintiff's ruptured disc might, with reasonable probability, have resulted from the accident," and we do not believe that the commissioner was "left to speculate about a matter which frequently troubles even orthopedic specialists." *See, e.g., Gillikin v. Burbage,* 263 N.C. 317, 324-25, 139 S.E. 2d 753, 759-60 (1965). Rather, we believe that, viewing the totality of the expert testimony in the light most favorable to plaintiff, there was "*some* evidence that the accident at least might have or could have produced the particular disability in question," and the commissioner's finding, with respect to the sufficiency of Dr. Timmons' opinion on causation, is, therefore, conclusive on this appeal.[5] *Click v. Freight Carriers,* 300 N.C. 164, 166-67, 265 S.E. 2d 389, 390-91 (1980).

In sum, we hold that the commissioner's critical findings and conclusions that were amply supported by competent evidence in the record consisting both of the expert testimony of Dr. Timmons, as well as that of Dr. Gavigan (the urologist), and the lay testimony of plaintiff that after the fall, she began to experience sharp pains in her back.

Defendant's assignments of error are overruled, and the opinion and award of the Industrial Commission is affirmed.

Affirmed.

Judges WELLS and BECTON concur.

---

5. We would again emphasize that we may not reverse the findings of the Industrial Commission just because there may be other evidence in the record which would support findings to the contrary. *Click v. Freight Carriers, supra; Morrison v. Burlington Industries,* 301 N.C. 226, 271 S.E. 2d 364 (1980).