BRENDA JOYCE HOLLEY, Employee, Plaintiff-Appellee v. ACTS, INC., Employer, LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendant-Appellants

No. COA01-931

(Filed 20 August 2002)

## 1. Workers' Compensation— findings—partially unsupported—no prejudicial error

There was competent evidence in a workers' compensation action to support an Industrial Commission finding about the circumstances of the injury where a specific sentence was not supported by the evidence, but there was competent evidence in the record to support the remainder of the finding and both parties stipulated to a statement of how the injury occurred.

## 2. Workers' Compensation— causation—"could" and "might" testimony

The Industrial Commission's finding in a workers' compensation action that plaintiff's deep venous thrombosis (DVT) was a result of an accident at work was supported by competent evidence and was not speculative even though it was couched in "coulds" and "mights." "Could" or "might" expert testimony is insufficient to support causation only when there is additional evidence showing the opinion to be speculation.

## 3. Workers' Compensation— deep venous thrombosis—compensation

An Industrial Commission opinion awarding benefits for permanent injury to an internal organ under N.C.G.S. § 97-31(24) for plaintiff's deep venous thrombosis was remanded for consideration of whether plaintiff's injury was a scheduled injury under N.C.G.S. § 97-31(15) for loss of use of her leg because an award under subsection (24) is permitted only if no compensation is payable under any other subsection of N.C.G.S. § 97-31.

Judge TYSON concurring in part, dissenting in part.

HOLLEY v. ACTS, INC.

[152 N.C. App. 369 (2002)]

Appeal by defendants from opinion and award entered 26 February 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 20 May 2002.

*Griffin, Smith, Caldwell, Helder & Lee, P.A., by Annika M. Brock and R. Kenneth Helms, Jr., for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Neil P. Andrews and Terry L. Wallace, for defendant-appellants.*

McGEE, Judge.

ACTS, Inc. (defendant-employer) and its insurance carrier Liberty Mutual Insurance Company (collectively defendants) appeal from the opinion and award of the North Carolina Industrial Commission (Industrial Commission) awarding workers' compensation benefits to Brenda Joyce Holley (plaintiff). Plaintiff was hired by defendant-employer in January 1996 to work at Plantation Estates, a medical care facility, as a Certified Nurses Assistant I.

Plaintiff was at Plantation Estates on 13 July 1996 when she saw a patient on the floor. As plaintiff walked down the hall to help lift the patient off the floor, plaintiff's foot became stuck on the carpet. She turned suddenly and injured her lower left leg in the calf. Plaintiff testified she "could hardly walk" and her left leg was in pain. Plaintiff returned to work on 14 July 1996. The pain in her leg continued to worsen and she noticed some swelling. She was examined by Dr. Jason Ratterree (Dr. Ratterree) at Presbyterian Hospital Matthews. Dr. Ratterree diagnosed plaintiff as suffering from muscle strain. He prescribed medication, told plaintiff to wear an ace bandage and use crutches, and ordered plaintiff to stay off her left leg for three days.

Plaintiff returned to work on 22 July 1996 and continued to work for defendant-employer. On 3 September 1996, plaintiff went to the doctor, and while at the doctor's office she experienced acute pain and swelling in her left lower leg and had to be hospitalized for three days. While at the hospital, plaintiff was diagnosed with deep venous thrombosis (DVT), which is a disorder involving a thrombus or blood clot in one of the deep veins of the body, causing an obstruction of the blood flow and often resulting in the pooling of blood in a lower extremity. Plaintiff saw Dr. Dietlinde W. Zipkin (Dr. Zipkin) and plaintiff returned to work on 16 November 1996. Plaintiff continued to experience leg pain and was hospitalized again on 16 June 1997 for chronic DVT.

Plaintiff's claim was heard before a deputy commissioner on 22 March 2000. The deputy commissioner filed an opinion and award concluding that "plaintiff's DVT was not the result of the plaintiff's injury by accident to her left leg arising out of and in the course of her employment." Plaintiff appealed to the Industrial Commission.

The Industrial Commission heard the matter on 24 January 2001 and issued an opinion and award concluding that "plaintiff's DVT was the result of the plaintiff's injury by accident to her left leg arising out of and in the course of her employment." The Industrial Commission ordered defendants to pay to plaintiff $20,000.00 plus interest pursuant to N.C. Gen. Stat. § 97-31(24), and seventeen and one-seventh weeks of temporary total disability at the rate of $162.40 per week plus interest. The Industrial Commission also ordered defendants to pay plaintiff's attorneys twenty-five percent of the compensation due plaintiff and to pay plaintiff's medical expenses and expert witness fees. Commissioner Laura Kranifeld Mavretic issued a dissenting opinion. Defendants appeal from the Industrial Commission's opinion and award.

On an appeal from an opinion and award of the Industrial Commission, the standard of review for this Court "is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). The Industrial Commission's findings of fact are binding on review if the record contains any competent evidence in their support. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). This is true even when the record offers evidence that would support findings to the contrary. *Id.* The Industrial Commission's conclusions of law, however, are reviewable *de novo. Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 149, 468 S.E.2d 269, 274 (1996).

I.

[1] Defendants first argue that the Industrial Commission erred in describing the circumstances surrounding plaintiff's alleged injury by accident.

The parties entered into stipulations at the hearing before the deputy commissioner which the Industrial Commission incorporated as findings of fact and conclusions of law in its opinion and award.

HOLLEY v. ACTS, INC.

[152 N.C. App. 369 (2002)]

Stipulation number five states that "[t]he parties stipulated that the plaintiff injured her left lower leg in the calf area when she turned suddenly while walking down the hall at her place of employment with the defendant-employer on July 13, 1996."

The opinion and award additionally stated in finding number four that

> [o]n July 13, 1996, the plaintiff was working for the defendant-employer as a floater. The plaintiff was assigned to help lift a patient off of the floor. As the plaintiff helped to lift the patient, the plaintiff's foot became stuck on the carpet as she turned suddenly and she injured her lower left leg in the calf. . . . The foot becoming stuck on the carpet as she turned suddenly constituted an accident and the resulting injury was an injury by accident within the meaning of the Workers' Compensation Act.

The Industrial Commission concluded in conclusion of law number one that "[o]n July 13, 1996, the plaintiff sustained an injury by accident to her left leg arising out of and in the course of her employment with defendant-employer."

Defendants argue on appeal that the sentence in finding of fact number four that "as the Plaintiff helped to lift the patient, Plaintiff's foot became stuck on the carpet as she turned suddenly[,]" is not supported by competent evidence in the record. They contend that "at the very least, [the opinion and award] should be modified to the extent it is necessary for a decision in this case."

At the hearing before the deputy commissioner, plaintiff testified as follows:

Q: Do you remember on July 13, 1996?

A: Yes, I do.

Q: Why do you remember that, Ms. Holley?

A: I was working there, and I was on the special care unit, which is the Alzheimer['s] unit. I had [gone] over to go to the bathroom, and Jan Waggey, the nurse there, asked me to go down and check with Ms. Bowman. She couldn't understand—which was a patient that—I was a floater. I floated from both sides. Asked me if I would check and see what she was saying. She couldn't understand her. At that time, I went down and talked with Mrs. Bowles. And as I was coming back up the hall to

HOLLEY v. ACTS, INC.

[152 N.C. App. 369 (2002)]

report to Ms. Waggey what she had said, I [saw] a patient on the floor . . . .

Q: What do you mean "on the floor"?

A: She had fallen. We're not to remove a patient [] unless we get the nurse. So Peggy Lee was a CNA, and Jan—we went down and picked her up. But as I hurried up the hall, I turned to go back; and, when I did, it was like my foot stuck to the carpet. They had [] new carpet put down; and, when I swerved around, I felt a pull in my leg, and I told Peggy when we got to the room—I said, "I have pulled my leg."

Q: Can you tell us specifically where in your leg?

A: In the calf of my leg.

Q: Which leg?

A: Left leg.

Q: All right. At that point, what did you do?

A: Helped get the patient up off the floor, and then I went back to special care. At that time, I could hardly walk. My leg was hurting[.]

The specific sentence defendants are challenging on appeal is not supported by competent evidence in the record. However, even if we set aside this sentence, there remains competent evidence in the record to support the remainder of finding of fact number four; namely, that plaintiff's foot became stuck on the carpet as she turned suddenly, which was an accident and the resulting injury was an injury by accident. Further, we note that both parties stipulated, and the Industrial Commission additionally found as fact that plaintiff "injured her left lower leg in the calf area *when she turned suddenly while walking down the hall at her place of employment*[.]" (emphasis added). This stipulation as incorporated in the opinion and award is fully supported by plaintiff's testimony and this stipulation supports conclusion of law number one. Defendants do not dispute that plaintiff's injury by accident arose out of and in the course of her employment with employer-defendant. Defendants' assignments of error as to this issue are overruled.

## II.

[2] Defendants next argue that the Industrial Commission erred in finding and concluding that plaintiff's injury by accident caused her

DVT because the medical evidence in this case is insufficient to establish a causal link between plaintiff's injury and her DVT.

To establish "a compensable claim for workers' compensation, there must be proof of a causal relationship between the injury and the employment." *Peagler v. Tyson Foods*, 138 N.C. App. 593, 597, 532 S.E.2d 207, 210 (2000) (citing *Booker v. Medical Center*, 297 N.C. 458, 475, 256 S.E.2d 189, 200 (1979)). An injury is therefore compensable if " 'it is fairly traceable to the employment' or 'any reasonable relationship to the employment exists.' " *Rivera v. Trapp*, 135 N.C. App. 296, 301, 519 S.E.2d 777, 780 (1999) (quoting *Shaw v. Smith and Jennings, Inc.*, 130 N.C. App. 442, 445, 503 S.E.2d 113, 116, *disc. review denied*, 349 N.C. 363, 525 S.E.2d 175 (1998)). The plaintiff has the burden of proving each element of compensability. *Harvey v. Raleigh Police Dept.*, 96 N.C. App. 28, 35, 384 S.E.2d 549, 553, *disc. review denied*, 325 N.C. 706, 388 S.E.2d 454 (1989).

In cases " 'where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, *only an expert can give competent opinion evidence as to the cause of the injury*.' " *Id.* at 34, 384 S.E.2d at 552 (quoting *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980)). "However, when such expert opinion testimony is based merely upon speculation and conjecture, it can be of no more value than that of a layman's opinion." *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000).

The "expert testimony need not show that the work incident caused the injury to a 'reasonable degree of medical certainty.' " *Peagler*, 138 N.C. App. at 599, 532 S.E.2d at 211 (citation omitted). "Rather, the competent evidence must provide 'some evidence that the accident at least might have or could have produced the particular disability in question.' " *Id.*, (quoting *Porter v. Fieldcrest Cannon, Inc.*, 133 N.C. App. 23, 28, 514 S.E.2d 517, 522 (1999)). Our Courts have "allowed 'could' or 'might' expert testimony as probative and competent evidence to prove causation." *Young*, 353 N.C. at 233, 538 S.E.2d at 916. However, " 'could' or 'might' expert testimony [is] insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." *Id.* (citing *Maharias v. Weathers Bros. Moving & Storage Co.*, 257 N.C. 767, 767-68, 127 S.E.2d 548, 549 (1962)).

**HOLLEY v. ACTS, INC.**

[152 N.C. App. 369 (2002)]

In the case before us, Dr. Ratterree testified as an expert in emergency medicine and general medicine. Dr. Ratterree examined plaintiff on 14 July 1996, the day following her accident at work. In his deposition, the following exchange took place:

Q: Dr. Ratterree, based upon your examination and the history related to you by [plaintiff], could the DVT that you found have been caused by the incident that she related to you, that is, the turning?

A: It's possible.

. . .

Q: And I think you had indicated that there was a possibility, in your opinion, that [plaintiff] suffered from DVT. What symptoms specifically was it in your examination that you felt indicated DVT?

A: Anytime somebody has had some injury as she had and has some tenderness on exam, you know, tenderness on the posterior calf as she did, the possibility is there, but the problem is that it's not one of those things that develops over a period of hours or minutes. . . .

. . .

Q: . . . Can you say to a reasonable degree of medical certainty or a reasonable degree of medical probability that the incident related to you by [plaintiff] was a significant contributing factor in causing DVT?

A: I can't say that, no.

Q: It's just that it's a possibility?

A: It's a possibility. It's a possibility.

Q: Is it a reasonable possibility?

A: It's reasonable. . . .

Dr. Zipkin also testified as an expert witness in the field of internal medicine and general medicine. Dr. Zipkin treated plaintiff after her DVT was diagnosed and testified as follows:

Q: [D]o you have an opinion satisfactory to yourself and to a reasonable degree of medical certainty as to whether the accident described in the reports from Presbyterian Hospital and

from Dr. Kaldy on July 13, 1996 could or might have caused the DVT?

. . .

A: I don't know if it caused the DVT or not.

Q: Do you have an opinion whether it could or might have caused it?

A: It could have caused it or it could have happened despite it.

. . .

Q: [I]f the evidence shows that [plaintiff] was walking down a hall and she quickly turned and experienced pain in her left calf, and at that point obtained medical treatment and a DVT was present—if the evidence should show that all that is true, do you have an opinion satisfactory to yourself whether or not that event could or might have caused the DVT?

. . .

A: We have nothing showing that DVT was present at the time of her injury, so isn't this kind of a moot point?

Q: My question is, though, could those events that I just described, could or might that have caused the DVT to form?

A: It's possible that that scenario of [plaintiff's] injury could have caused a DVT to form, but I don't know that it did.

Defendants argue that this evidence is insufficient to establish a causal link between plaintiff's injury by accident and her diagnosis of DVT because the medical testimony was "couched in terms of 'coulds' and 'mights' which was speculative in nature and not competent evidence of causation." We disagree. In this case, there is sufficient evidence that the accident might have or could have caused plaintiff's DVT. Although DVT can arise from several different causes, "[a]ll that is necessary is that [the] expert express an opinion that a *particular* cause was *capable* of producing the injurious result." *Buck v. Procter & Gamble, Co.*, 52 N.C. App. 88, 95, 278 S.E.2d 268, 273 (1981). Both doctors testified as to the multiple causes of DVT, but both also testified that plaintiff's DVT could have been caused by her accident on 13 July 1996.

The Industrial Commission's finding of fact that plaintiff's accident on 13 July 1996 caused her DVT is supported by competent

evidence in the record and is not based on mere speculation or conjecture. Further, the Industrial Commission did not err in concluding that plaintiff's DVT was a result of her 13 July 1996 accident. Defendants' assignments of error as to this issue are overruled.

III.

[3] Finally, defendants contend the Industrial Commission erred in awarding plaintiff benefits under N.C. Gen. Stat. § 97-31(24). The Industrial Commission found as fact and concluded as a matter of law that "[d]amage to the innermost layer of the vein constitutes permanent injury to an internal organ or part of the body for which no compensation is payable under any other subdivision of N.C. Gen. Stat. § 97-31(24)." The Industrial Commission awarded plaintiff the full amount of compensation allowed in N.C. Gen. Stat. § 97-31(24).

N.C. Gen. Stat. § 97-31(24) (1999) states that

[i]n case of the loss of or permanent injury to any important external or internal organ or part of the body for which no compensation is payable under any other subdivision of this section, the Industrial Commission may award proper and equitable compensation not to exceed twenty thousand dollars ($20,000).

"By employing the word 'may' in N.C.G.S. § 97-31(24) the legislature intended to give the Industrial Commission discretion whether to award compensation under that section." *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986). Thus, the Industrial Commission has discretion as to whether an award under N.C. Gen. Stat. § 97-31(24) is warranted, and its decision will not be overturned on appeal unless it " 'is manifestly unsupported by reason,' " or " 'so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) and *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985)).

Defendants argue that because plaintiff was entitled to compensation under N.C. Gen. Stat. § 97-31(15), which provides an employee compensation for the loss of the use of her leg, the Industrial Commission abused its discretion in awarding her benefits under N.C. Gen. Stat. § 97-31(24). The language of N.C. Gen. Stat. § 97-31(24) is clear that an award under this subsection, although discretionary, is only permitted if "no compensation is payable under any other subdivision" of N.C. Gen. Stat. § 97-31 as a scheduled injury. It is not clear from the record if the Industrial Commission considered whether an

award to plaintiff under N.C. Gen. Stat. § 97-31(15) for loss of the use of her leg was not proper before it determined that an award under G.S. § 97-31(24) was appropriate; we therefore cannot determine whether the Industrial Commission abused its discretion in its award to plaintiff under N.C. Gen. Stat. § 97-31(24). We remand this case to the Industrial Commission in order that it first consider whether plaintiff's injury is a scheduled injury under N.C.G.S. § 97-31(15) before considering whether an award to plaintiff is appropriate pursuant to N.C. Gen. Stat. § 97-31(24).

Remanded.

Chief Judge EAGLES concurs.

Judge TYSON concurs in part and dissents in part with a separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I concur in parts I and III of the majority's opinion. I respectfully dissent from part II. Plaintiff failed to introduce competent evidence to establish a causal relationship between the compensable injury by accident and the ensuing deep venous thrombosis (DVT). The expert testimony was mere speculation and possibility, and failed to establish the required causal connection.

Plaintiff must produce competent evidence establishing a causal relationship between the injury and the employment. *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 597, 532 S.E.2d 207, 210 (2000). Testimony of an expert that is merely speculative or that raises no more than a mere possibility is not admissible as to the issue of causal relationship. *Lockwood v. McCaskill*, 262 N.C. 663, 669, 138 S.E.2d 541, 545-46 (1964); *see also Ballenger v. Burris Indus., Inc.*, 66 N.C. App. 556, 567, 311 S.E.2d 881, 887 (1984) (stating that an expert is not competent to testify regarding causal relation based on mere speculation or possibility). "Could" or "might" refers to probability and not mere possibility. *See Lockwood*, 262 N.C. at 668, 138 S.E.2d at 545. Here, both experts testified only as to possibility and not probability.

Our Supreme Court has previously "allowed 'could' or 'might' expert testimony as probative and competent evidence to prove causation." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000) (citations omitted). However, " 'could' or

'might' expert testimony [is] insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." *Id.* (citing *Maharias v. Weathers Bros. Moving & Storage Co.*, 257 N.C. 767, 767-68, 127 S.E.2d 548, 549 (1962)). Here, additional testimony shows the experts' opinions to be mere guess and speculation.

In addition to the testimony cited by the majority, Dr. Ratterree also testified in response to a question of whether he had an opinion "as to whether the twisting injury on July 13, 1996 could or might have been a significant contributing factor to deep venous thrombosis," that "[i]n my opinion it *probably is not*, but I cannot say, you know, beyond a shadow of a doubt. . . ." and

[i]n my opinion it *would be unlikely* . . . . I cannot say that she had turned and this had been brewing even before that, because a lot of DVTs are totally asymptomatic for a long time . . . I know these clots take time to develop, so I can't say that she wasn't brewing something even before then. *It's just a galaxy of possibilities.*

(Emphasis supplied).

The expert medical testimony does not show a causal relationship between the injury by accident and the DVT. *See Harvey v. Raleigh Police Dept.*, 96 N.C. App. 28, 35, 384 S.E.2d 549, 553, *disc. review denied*, 325 N.C. 706, 388 S.E.2d 454 (1989) (plaintiff has the burden of proving each element of compensability). There is no competent evidence to support the Industrial Commission's finding and conclusion that plaintiff's DVT was causally related to her twisting injury. I would reverse the Opinion and Award of the Commission. I respectfully dissent.