The majority and the Deputy Commissioner have, in my view, overlooked the time-honored mandate of the North Carolina Supreme Court that "the evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence."Doggett v. South Atl. Warehouse Co., 212 N.C. 599, 194 S.E. 111 (1937), cited with approval in Adams v. AVX Corp., 349 N.C. 676, 509 S.E.2d 411
(1998).
The Worker's Compensation Act in North Carolina is an embodiment of the General Assembly's intent to "compel industry to take care of its own wreckage." Hyler v. G.T.E. Products Co., 333 N.C. 258 at 268,425 S.E.2d 698, 704 (1993). "The Worker's Compensation Act is to be construed liberally, and benefits are not to be denied upon technical, narrow or strict interpretation of its provisions." Matthews v.Charlotte-Mecklenburg Hospital, 132 N.C. App. 11, 21, 510 S.E.2d 388,395, dis. rev, den. 350 N.C. 834, ___ S.E.2d ___ (1999); Dayal v.Provident Life, 71 N.C. App. 131, 132, 321 S.E.2d 452, 453 (1984).
My vote is to reverse the Deputy Commissioner and pay the benefits to the injured worker that North Carolina law demands.
To establish a right to workers' compensation benefits for an occupational disease under North Carolina General Statute § 97-53(13) (1991), the employee must show: (1) the disease is characteristic of individuals engaged in the particular trade or occupation in which the claimant is engaged; (2) the disease is not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there is a causal relationship between the disease and the claimant's employment. Rutledgev. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). The evidence in the present case meets the criteria set forth by the North Carolina Supreme Court in Rutledge.
The first two elements of the Rutledge test require a showing that the Plaintiff in an occupational disease claim was placed at an increased risk of developing the disease when compared to members of the public not so employed. Id. at 93 and 94, 365. Ms. Faison's treating physician, Dr. Powell, was deposed following the hearing of this claim. Dr. Powell's testimony satisfies the first two elements of the Rutledge test. Dr. Powell was given a description of Ms. Faison's job duties, consistent with both Ms. Faison's testimony and Robert Caldwell's testimony. Based on this job description, Dr. Powell testified that Ms. Faison was at an increased risk of developing carpal tunnel syndrome. (Powell depo p. 15)
The third element of Rutledge requires a showing of a causal relationship between the disease and the employment. This element was also established by Dr. Powell's deposition testimony. Dr. Powell testified that carpal tunnel syndrome was usually found in people who do a job requiring continuous use of the hands over a period of 18 months to three years. (Powell depo pp. 17 and 18) Dr. Powell was asked if the fact that Ms. Faison had worked with defendant-employer for six years influenced his opinion as to whether her carpal tunnel syndrome could have been caused by her job. Dr. Powell testified, "In most likelihood, if I had a good job description, it would be positive." (Powell depo p. 28) During his deposition, Dr. Powell was shown an insurance form that was completed by his office stating that Ms. Faison's condition was not due to sickness or injury arising out of her employment. Dr. Powell testified that he had answered that particular question truthfully. (Powell depo p. 22) However, later in his deposition, Dr. Powell explained that Ms. Faison has not given him a history of the type of work she performed, so based on that he had to answer the question on the form that her work did not cause her carpal tunnel syndrome. (Powell depo p. 29) Dr. Powell testified that based on Ms. Faison's job description as it was testified to at the hearing of this claim that Ms. Faison's carpal tunnel syndrome probably came from her occupation. (Powell depo p. 29)
Deputy Commissioner Garner and the majority of the Full Commission panel found that Ms. Faison's pregnancy raised questions as to how she contracted carpal tunnel syndrome. (Finding of Fact # 18, page 6) This finding of fact is not supported by the evidence. Dr. Powell clearly testified that pregnancy was not a condition that can cause carpal tunnel syndrome. (Powell depo p. 22) Deputy Commissioner Garner and the majority also stated that Dr. Powell's diagnosis of carpal tunnel syndrome coincided with Ms. Faison's pregnancy and the date of her recovery with the end of her pregnancy. (Finding of Fact # 19, page 6) This finding of fact is also not supported by the evidence. The medical records from Dr. Powell, as well as his deposition testimony, establish that Dr. Powell was suspicious of carpal tunnel syndrome as early as his initial evaluation of Ms. Faison on February 2, 1999. This was approximately four to five months before Ms. Faison became pregnant, which was in June or July 1999.
Dr. Powell did testify that Ms. Faison's weight could have been a factor in her carpal tunnel syndrome. (Powell depo p. 23) This does not negate Dr. Powell's testimony that Ms. Faison's carpal tunnel syndrome was caused by her job. The law does not require that the job be the only cause; it is sufficient that the job is one of the causes. This was discussed by the Court of Appeals in Peagler v. Tyson Foods, Inc.,138 N.C. App. 593, 532 S.E.2d 207 (2000). In Peagler, the Court of Appeals cited the North Carolina Supreme Court's opinion in Lockwood v.McCaskill, 262 N.C. 663, 138 S.E.2d 541 (194), which stated in part that, "a result in a particular case may stem from a number of causes. . . . All that is necessary is that an expert express an opinion that a particular cause was capable of producing the injurious result."Id. at 600, 211 and 212.
Deputy Commissioner Garner and the majority also erred in his application of the law to the causation standard in Conclusion of Law #3. In that Conclusion of Law, Deputy Commissioner Garner and the majority stated that there must be medical evidence to a reasonable scientific probability that the sated cause produced the stated result. They further stated that a probability in not enough in medical testimony to prove causation, citing Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000) where the Supreme Court noted that while it has previously found "could" or "might" expert testimony to be competent evidence to prove causation, see Id. at 916 (citing Mann v. Virginia DareTransp. Co., 283 N.C. 734, 747-48, 198 S.E.2d 558, 567-68 (1973)), it also found "could" and "might" expert testimony to be insufficient to support a causal connection when there is additional evidence or testimony to show the expert's opinion to be a guess or mere speculation, see Id. (citing Maharias v. Weather Bros. Moving Storage Co., 257 N.C. 767, 767-68, 127 S.E.2d 548, 549 (1962)). There is not evidence in the present case showing Dr. Powell's opinion to be mere speculation. Reliance on this particular case was erroneous.
The Court of Appeals recently addressed this issue in Holley v. Acts,Inc. 567 S.E.2d 457 (2000). This case involved a plaintiff with a diagnosis of deep venous thrombosis (DVT). The Deputy Commissioner who heard the claim concluded that the plaintiff's DVT was not the result of her injury by accident to her left leg arising out of and in the course of her employment. The Full Commission reversed the Deputy Commissioner's Opinion and Award and concluded that the plaintiff's DVT was caused by her injury by accident. On appeal to the North Carolina Court of Appeals, the defendant argued that the medical evidence was insufficient to establish a causal link between plaintiff's injury and her DVT. The Court of Appeals discussed the case law on this issue, citing the same cases and language cited in the majority Opinion and Award in the present case. The Court then discussed the medical testimony. The doctor testified that it was possible that the plaintiff's DVT was caused by her accident at work. Id. at 461. The doctor could not say to a reasonable degree of medical certainty, or even a reasonable degree of medical probability, that the accident caused plaintiff's DVT, only that it was a reasonable possibility. Id. at 461. The doctor further testified that the accident at work could have caused the DVT, or it could have happened despite the accident. Id. at 462. The Court of Appeals held that this testimony was sufficient to provide the causal connection, and that this testimony rose above mere speculation and conjecture. Id. at 462. The testimony from Dr. Powell in the present case also rises above mere speculation and conjecture. In fact, Dr. Powell's testimony is at least as strong as the doctor's testimony in the Holley case.
It is clear from Dr. Powell's testimony that Ms. Faison's job duties with defendant-employer placed her at an increased risk of developing carpal tunnel syndrome as opposed to members of the general public not so employed. Dr. Powell's testimony clearly satisfies the criteria established to bring an occupational disease claim under the North Carolina Workers' Compensation Act.
The evidence in the present claim also establishes that Ms. Faison was disabled from February 2, 1999, until October 23, 2000. North Carolina General Statute § 97-2(9) defines disability as incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment. Dr. Powell kept Ms. Faison out of work from February 2, 1999, until October 23, 2000. There is no evidence to contradict that Ms. Faison was completely unable to perform her job duties with defendant-employer until Dr. Powell released her from his care once her carpal tunnel syndrome had resolved on October 23, 2000.
The majority's findings of fact and conclusions of law are erroneous and not supported by the greater weight of the evidence. The medical evidence provides a sufficient basis for a causal connection between Plaintiff's employment and her carpal tunnel syndrome. The medical evidence also establishes that Plaintiff s job duties with defendant-employer placed her at an increased risk of developing carpal tunnel syndrome.
This 13th day of February 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER