I respectfully dissent from the Opinion and Award of the majority because I do not believe plaintiff has met her burden under Holley v.ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003), of proving a causal relation between the stenosis of plaintiff's spinal canal at L3-4 and plaintiff's December 25, 2002, compensable injury by accident.
"When dealing with a complicated medical question . . ., expert medical testimony is necessary to provide a proper foundation for the Commission's findings" of causation. Holley at 234, 581 S.E.2d at 754. Thus, the expert medical testimony presented before the Commission must be sufficient to "meet the reasonable degree of medical certainty standard necessary to establish a causal link between" plaintiff's workplace accident and her spinal stenosis. Id.
Dr. Miller testified as follows concerning his diagnosis of plaintiff's spinal stenosis:
 Q. Ultimately, what were the results of the myelogram and CT scan?
 A. My interpretation of them was that there appeared to be a solidly healed fusion at the previous surgical area with no evidence of nerve entrapment there, but there appeared to be a narrowing of the spinal canal at L3-4, which is the level above the fusion, as well as a narrowing of the nerve root outlet hole where the nerve exits the spinal canal at the L3-4 level.
 Q. Now when you say narrowing, that — is narrowing of the spinal canal traumatically induced or is that a degenerative type symptom?
 A. Well, it's called stenosis, and it is a combination of both. It's probably and most likely a combination of preexisting degenerative changes with a superimposed injury.
 Q. Okay, so it's a condition that could be there and, I guess — correct me where I'm wrong or tell me if I'm right — it's a condition that can be there, the stenosis, and it may be asymptomatic? But if a person has some type of trauma to the spine, can it then become symptomatic?
 A. Yes. It could be dormant in regards to symptomatology. The changes in the spine are there, but they don't necessarily have to be symptomatic.
 Q. But it would not be unusual or abnormal for someone to have trauma to the spine and for you to find stenosis?
 A. That's correct, yes.
Although Dr. Miller described plaintiff's spinal stenosis as "probably and most likely a combination of preexisting degenerative changes with a superimposed injury," Dr. Miller did not associate such a "superimposed injury" with plaintiff's actual workplace accident. In fact, Dr. Miller failed to provide any indication of the type of trauma likely to result in the type of stenosis he diagnosed in plaintiff. Because Dr. Miller did not actually relate plaintiff's stenosis to either the conditions or the date of plaintiff's workplace accident, I respectfully believe that Dr. Miller's testimony is insufficient to meet the standard of evidence for causation set forth in Holley.
Moreover, Dr. Miller's testimony is particularly insufficient to meet the standard of evidence for causation in the present action, given Dr. McAvoy's expressly contrary testimony that "the injury that [plaintiff] sustained did not result in an injury to her spine."
Because I do not believe that plaintiff has met her burden of demonstrating that her spinal stenosis resulted from her compensable workplace injury, I respectfully dissent from the majority's Opinion and Award.
This the ___ day of June, 2007.
S/___________________
 BUCK LATTIMORE
 CHAIRMAN *Page 1