* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except *Page 2 
for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. American Home Assurance Company was the carrier on the risk.
In addition, the parties stipulated into evidence the following:
 a. Packet of medical records and reports consisting of seventy-five pages.
 b. Additional medical records submitted on February 6, 2004.
 c. Additional medical records submitted on February 12, 2004.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was seventy-three years old at the time of the hearing before the Deputy Commissioner, and is a high school graduate. She began working for defendant-employer in July 1998 at the Wal-Mart store in Dunn as a greeter. Her job duties included greeting customers as they entered the store, offering them a shopping cart, handling returned merchandise, providing directions, and *Page 3 
keeping the area at the entrance to the store clean. She had to stand throughout her work shift except during breaks. Although hearing impaired, she was able to lip-read and communicate with the customers with minimal difficulty.
2. When assigned to the morning shift, plaintiff would occasionally help take the chairs off of the tables in the store restaurant since she liked staying busy. On or about February 14, 2003, she helped a coworker put the chairs in the restaurant on the floor and, at sometime during the process, she felt a pop in her neck. She had no other symptoms at the time, however, and she continued working, resuming her post at the entrance to the store. Some time later that day, she noticed a pins and needles sensation in the fingers of her right hand and numbness in her right arm. She worked the remainder of her shift and then went home. During the night, she woke up with severe pain in her right shoulder and upper right chest, so she went to the emergency room.
3. Plaintiff had a prior history of heart problems. According to the medical reports, she had had a myocardial infarction in the past and had had a pacemaker implanted in October 2002. Consequently, on this occasion she thought that her symptoms were probably heart related. At the emergency room, an EKG was performed and they tested her heart enzymes. No cardiac problems were identified. Consequently, her right shoulder was then x-rayed and she was given medication for muscle spasms.
4. On February 18, 2003, plaintiff followed up at Dr. Rao's office where she saw the nurse practitioner. The nurse increased the dosage of her medication. Plaintiff returned on February 25, 2003, with persistent symptoms in her neck, right shoulder and arm. The nurse ordered an x-ray of her cervical spine and referred her to Dr. Brown, an orthopedic surgeon. *Page 4 
5. Dr. Brown examined plaintiff on February 26, 2003. The history noted at his office was confusing. Although the symptoms were noted to have started approximately two weeks before that date, they were also noted to have started on January 2, 2003, and to have increased during the previous two weeks. When Dr. Brown asked her if she had hurt herself, she was not able to describe an injury, although she had told the radiology staff at the hospital the day before about lifting the chairs at work. In any event, Dr. Brown was never made aware of the incident at work. He noted that plaintiff began to have right shoulder, neck and arm pain on January 2, 2003, that her hands started to go numb in January, that she woke up with her current pain and that she denied overuse, injuries or trauma.
6. Dr. Brown reviewed her x-rays, which showed degenerative disc disease and degenerative joint disease at multiple levels in her cervical spine. Her findings and symptoms suggested cervical radiculopathy, so he ordered diagnostic tests including nerve tests and a CT scan of her cervical spine, since he could not order an MRI due to her pacemaker. There were abnormalities on the CT scan and the nerve tests results were consistent with bilateral cervical radiculopathy. Dr. Brown then recommended that she undergo some epidural steroid injections, but she ultimately canceled the first procedure due to an allergy to cortisone.
7. Plaintiff became frustrated with her lack of progress and on March 27, 2003, went to the emergency room complaining of severe neck pain radiating to both shoulders and explaining that none of the doctors had given her a diagnosis or had helped her. At the request of the emergency room physician, she agreed to see Dr. Rao the next morning, and on March 28, 2003, Dr. Rao examined her. He continued providing conservative treatment until April 24, 2003, when his office scheduled an appointment for her with Dr. Allen, a neurosurgeon. *Page 5 
8. Dr. Allen examined plaintiff on April 28, 2003. She told him that she had had neck and right arm pain since February 14, 2003, and that the pain was generally better but was intermittently severe. After examining her, he was of the impression that her symptoms could be coming from nerve root compression, so he ordered a myelogram/CT scan. The tests did reveal nerve root compression on the right at C6-7 suggestive of a lateral disc herniation. Since her symptoms had persisted despite conservative treatment, Dr. Allen offered the option of surgery. On June 2, 2003, he performed surgery to decompress the C6-7 interspace. Following the operation, plaintiff's arm symptoms resolved but she continued to have some neck pain, which was worse after standing for long periods of time. In October 2003 she was released to return to work but the physician's assistant recommended that she be given a stool to sit on as needed. Her employer would not accommodate that restriction and she had not returned to work as of the date of hearing before the Deputy Commissioner.
9. Plaintiff has filed this claim for workers' compensation benefits for the incident of February 14, 2003, and defendants have denied liability.
10. The Full Commission finds that plaintiff did sustain a specific traumatic incident of the work assigned on February 14, 2003, when she lifted the chair off of the table and felt a pop in her neck. However, since she had no pain or other symptoms at the time, she did not believe that she was injured. She did not mention the incident to her co-worker or report an injury to her supervisor. When she went to the hospital the next morning, she did not describe the incident to the emergency room staff. It was understandable that she could not diagnose herself and, with her history of cardiac problems, that she thought the symptoms were probably heart related, yet no one except the radiology staff on February 25, 2003, made any notation that she had mentioned having had a possible problem while lifting the chairs at work. Even in the one consistent history, the symptoms were noted to have been *Page 6 
present for two months, which would have them dating back to the end of December 2002. Furthermore, both Dr. Brown and Dr. Allen recorded histories with a date of onset of symptoms of January 2, 2003.
11. Under the circumstances, expert medical testimony is necessary to establish a causal relationship between the incident that occurred on February 14, 2003, and the cervical spine condition with which plaintiff was subsequently diagnosed. Neither Dr. Brown nor Dr. Allen were able to provide a causal relationship to a reasonable degree of medical certainty. Dr. Brown testified that plaintiff never provided a history of a work-related incident to him and, thus, stated he could not provide an opinion as to the cause of plaintiff's cervical spine condition. Further, Dr. Allen also testified that plaintiff never provided a history of a work-related incident to him and, thus, was of the opinion that it would be speculative to attempt to establish a causal relation or connection between the work-related incident and plaintiff's cervical spine condition. Dr. Allen added that 80 percent of cervical disk herniations, like the plaintiff's condition, occur spontaneously without a specific event. Thus, the Full Commission finds that plaintiff has failed to show that the specific traumatic incident on February 14, 2003, was a causative factor in the development of her cervical spine condition.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Although plaintiff did sustain a specific traumatic incident of the work assigned on February 14, 2003, she did not prove that the incident resulted in a neck injury or that the cervical spine condition with which she was subsequently diagnosed was a proximate result of the incident. N.C. Gen. *Page 7 
Stat. § 97-2 (6); Click v. Pilot Freight Carriers, Inc., 300 N.C. 164
(1980); Holley v. ACTS, Inc., 357 N.C. 228 (2003).
2. Plaintiff is not entitled to benefits under the Workers' Compensation Act for her cervical spine condition. N.C. Gen. Stat. § 97-2 et seq.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. This claim must be, and is hereby, DENIED.
2. Each side shall pay its own costs.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ PAMELA T. YOUNG COMMISSIONER *Page 1