***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission reverses the Opinion and Award of Deputy Commissioner Phillips.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On or about June 7, 2006, Plaintiff suffered a compensable injury while working for the Employer-Defendant as a trim bore machine operator when she reached for laminated boards that were falling at her work station. Following her injury, Plaintiff continued to work.
2. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At such time, an employment relationship existed between Plaintiff and Employer-Defendant.
4. Key Risk Insurance Co. was the carrier on the risk for Employer-Defendant.
5. Defendants filed a Form 60 dated September 18, 2006, accepting Plaintiff's claim for the injury to her neck.
6. Defendants filed a Form 24 Application to Terminate Payment of Compensation on March 22, 2007, which was approved on April 30, 2007, by Special Deputy Commissioner Lacy Maddox. *Page 3 
 ***********
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. On or about June 7, 2006, Plaintiff was employed by Employer-Defendant as a trim bore machine operator. Plaintiff earned $9.85 per hour. On that date, Plaintiff reached for laminated boards that were falling at her work station causing pain in her neck. Following her injury, Plaintiff continued to work.
2. On June 13, 2006, Plaintiff sought treatment with Dr. Kelly Scott, who made an initial diagnosis of a neck sprain/strain, provided Plaintiff with conservative treatment, and released Plaintiff to return to work with lifting restrictions. On August 22, 2006, Plaintiff was given an MRI, which revealed degenerative disc disease at the C5-6 and C6-7 levels and findings suggesting a focal disc herniation at the C5-6 level.
3. On September 8, 2006, Plaintiff presented to Dr. Max Cohen complaining of neck pain. Dr. Cohen prescribed physical therapy and a steroid dosepak, and wrote Plaintiff out of work for two weeks. On October 2, 2006, Dr. Cohen released Plaintiff to return to work at full duty with a 5 hour work day and ordered therapy, including home traction and a TENS unit. On October 23, 2006, Dr. Cohen recommended surgery and stated Plaintiff would be eligible for light duty work 4-6 weeks postoperative and would be at MMI in 3 months.
4. On November 9, 2006, Plaintiff underwent an anterior cervical diskectomy, an anterior cervical arthrodesis, and anterior cervical plating, all at the C5-6 level and performed by Dr. Cohen. *Page 4 
5. On December 22, 2006, Dr. Cohen released Plaintiff to return to work with restrictions of no lifting over 5 pounds, no overhead work, and no bending, stooping, squatting. In addition, Dr. Cohen ordered Plaintiff to begin physical therapy. On February 5, 2007, Dr. Cohen wrote Plaintiff out of work for one month, noting she would be able to return to work at full duty on March 5, 2007.
6. On January 8, 2007, Brian Bernas, an expert in vocational rehabilitation, performed a job analysis and description of the trim bore machine operator position, which was the position Plaintiff performed at the time of the incident which gives rise to this claim. Mr. Bernas' job description was thoroughly done and accurately described the position performed by Plaintiff on her date of injury.
7. On March 7, 2007, Dr. Cohen reviewed the job description for the trim bore machine operator position prepared by vocational expert Brian Bernas. After discussing the job with Plaintiff, Dr. Cohen approved the position.
8. On March 7, 2007, Dr. Cohen noted Plaintiff was making little progress and had little motivation to return to work. Dr. Cohen released Plaintiff to return to work at light duty with restrictions of no lifting over 10 pounds, no overhead work, no climbing, and occasional bending, stooping, squatting. Dr. Cohen also noted Plaintiff was nearing MMI and would probably need permanent work restrictions and a rating.
9. After her appointment on March 7, 2007, Plaintiff presented unannounced to Employer-Defendant's operations plant and Employer-Defendant representative, Richard Goff, that she had been released to light duty. At the time she presented Mr. Goff had not received documentation of Plaintiff's work release nor had he been advised whether Dr. Cohen approved the trim bore position. Accordingly, he declined to offer Plaintiff a position that day. *Page 5 
10. Thereafter, upon receiving the documentation from Dr. Cohen approving the trim bore machine operator position and releasing Plaintiff to light duty, Employer-Defendant sent Plaintiff a letter offering her to return to work at the trim bore machine operator position on March 20, 2007.
11. On March 19, 2007, Plaintiff's counsel sent a letter to Dr. Cohen asking that he clarify his restrictions in relation to Mr. Bernas' job description, incorrectly quoting the restrictions. Dr. Cohen noted in a hand written response that there was "no contradiction" between Plaintiff's restrictions and the job description.
12. On March 20, 2007, Plaintiff did not return to work, nor did she or her attorney contact Employer-Defendant in any manner.
13. On March 22, 2007, Defendants filed a Form 24 Application toTerminate Payment of Compensation.
14. On April 3, 2007, Dr. Cohen evaluated Plaintiff and noted she was disputing her ability to return to work. Dr. Cohen once again affirmed that the job description prepared by Mr. Bernas met Plaintiff's permanent restrictions.
15. The job description done by Mr. Bernas is an accurate job description and falls within the restrictions given to Plaintiff by Dr. Cohen.
16. On April 3, 2007, Dr. Cohen gave Plaintiff a 15% permanent partial impairment rating to her back and released Plaintiff from his care.
17. Plaintiff responded timely to Defendants' March 22, 2007, Form 24 and the Industrial Commission held an informal telephone hearing on April 23, 2007. In a decision filed on April 30, 2007, Special Deputy Commissioner Lacy Maddox approved the Defendants' *Page 6 
application, allowing Defendants to suspend payment of compensation to Plaintiff for "unjustified refusal to accept suitable work," beginning March 22, 2007.
18. Plaintiff did not request to return to work in the trim bore position while the Form 24 was pending and only presented to the Employer-Defendant on May 2, 2007, after the Form 24 was approved by the Industrial Commission. The Employer-Defendant regularly employs workers to perform the trim bore operator position. As of May 2, 2007, the Employer-Defendant had full time employees performing the trim bore operator position. After Plaintiff's refusal of the job in March, and considering that Plaintiff did not present for the job until after the Form 24 was decided against her, the Employer-Defendant declined to offer Plaintiff a position.
19. On May 3, 2007, Plaintiff filed a Form 33 Request That Claim BeAssigned for Hearing; raising the issues of (1) whether Plaintiff is permanently and totally disabled, (2) whether Defendants failed to provide suitable employment, (3) whether Employer-Defendant terminated Plaintiff in bad faith and (4) whether Carrier-Defendant had improperly refused to provide medical treatment.
20. Following her release to return to work with restrictions on March 7, 2007, Plaintiff failed to seek employment at a position other than that with Employer-Defendant. Plaintiff has not made inquiries of possible employment with other employers nor has she placed any applications for employment. Plaintiff has not engaged in any job search following her work release.
21. On August 6, 2007, Plaintiff presented to Dr. Stephen Furr complaining of neck pain. Dr. Furr opined Plaintiff was not yet at MMI and recommended she have an FCE done to determine her abilities. In addition, Dr. Furr recommended Plaintiff see a neurologist and a pain specialist. Dr. Furr has no further treatment to offer Plaintiff since he would not be in a position *Page 7 
to perform any additional surgery, should that be required, and further, because he indicated that pain management is the appropriate treatment for Plaintiff going forward. Dr. Furr also noted it is likely Plaintiff suffers from depression, but he did not offer any expert opinion whether that condition was causally related to Plaintiff's compensable accident. Rather he deferred to mental health professionals to make that determination.
22. On October 24, 2007, Plaintiff presented to neurologist Dr. Jeffrey Siegel. Dr. Siegel noted Plaintiff's case was complicated by the fact she was seeing so many medical care providers and stated that, because Plaintiff is being treated by so many physicians, he is unwilling to provide any treatment.
23. Plaintiff was examined by two psychologists, Dr. Noble and Dr. Warren. Dr. Noble gave no opinion whether a diagnosis of depression is causally related to Plaintiff's injury which gives rise to this claim. He also made no recommendations for treatment. Dr. Warren stated that he could not give an opinion as to the cause for Plaintiff's mental health issues. The evidence shows that Plaintiff was actively treating for depression and anxiety on the day of her accident. Accordingly, any mental health condition pre-existed her compensable work injury, and there is no competent evidence to show that the condition was in any way affected by her injury.
24. On October 19, 2007, Plaintiff presented to Dr. Hans Hansen. Dr. Hansen provided Plaintiff treatment for pain management. Dr. Hansen has placed Plaintiff at MMI for her injury which gives rise to this claim and continues to treat Plaintiff for pain management.
25. Plaintiff is a high school graduate and has worked in the furniture industry before her position with Employer-Defendant. Prior to working with Employer-Defendant, Plaintiff *Page 8 
worked for the Lexington Furniture Company in multiple capacities, including with cabinets, packaging, rugs, and sanding.
26. Plaintiff has the general educational development levels in mathematics and language required to perform in a job as a machine operator, cashier, and file clerk, among other positions. In addition, Plaintiff is employable, based on her math and language development levels as well as her physical restrictions, at her pre-injury wage.
27. Plaintiff's position with Employer-Defendant, prior to and on the date of her injury, was as a trim bore machine operator. The job of a trim bore machine operator takes place in a work station measuring roughly 8' by 8', which is enclosed by the trimming machine on one side and a trash receptacle on the opposite side and a cart of slim long particle-wood boards that need to be cut by the machine and a cart meant for the excess left over after the boards have been cut sitting opposite each other and thus completing the enclosure of the square work area.
28. The machine operator position entails picking up stock from a cart sitting at waist height and placing the stock on the cutting machine table, which is also at waist height. Each piece of stock weighs two to three pounds, and the stock can be transferred to the cutting table three to four pieces at a time, thus allowing the operator to lift no more than ten pounds total.
29. When the employee has the stock flush so it is even, the operator presses down on a pedal sitting at the base of the machine, at which point the machine clamps down on the stock and slices the ends off the stock. This leaves a small amount of stock left on one end, a long amount of stock left at the other, and the finished product cut to spec length in the middle. The small amount of stock is picked up by the worker and tossed in the trash receptacle behind her and the finished product is automatically flipped down on to a conveyor belt and transported *Page 9 
away from the work station. The left over long amount of stock is then picked up and placed on a cart sitting to one of the workers sides.
30. The trim bore machine operator position does not require more than occasional bending, stooping, and squatting.
31. The trim bore machine operator position does not require the operator to lift more than 10 pounds.
32. The trim bore machine operator position does not require the operator to climb in any capacity, including on the machine.
33. The trim bore machine operator position does not require the operator to rotate her shoulder joint beyond 90 degrees, and therefore does not require overhead lifting.
34. Plaintiff could perform the trim bore machine operator position within the permanent restrictions given by Dr. Cohen.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The employee has the burden of proving both the existence and extent of her disability by and through (1) the production of medical evidence that [she] is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that [she] is capable of some work, but that [she] has, after a reasonable effort on [her] part, been unsuccessful in [her] effort to obtain employment; (3) the production of evidence that [she] is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or *Page 10 
(4) the production of evidence that [she] has obtained other employment at a wage less than that earned prior to the injury. Russell v. LowesProd. Distribution, 108 N.C. App. 762, 425 S.E.2d 454, 457 (1993). There has been no execution of a Form 21 or Form 26, and there has not been a prior disability award from the Industrial Commission. As such, there is no presumption of disability in favor of the Plaintiff and the burden remains on her to prove that she continues to be "disabled." Clark v.Walmart, 360 N.C. 41, 43, 619 S.E.2d 491, 493 (2005) (quoting and citing to Johnson v. Southern Tire Sales Serv., 358 N.C. 701, 599 S.E.2d 508
(2004).
Plaintiff failed to produce evidence showing that she is medically unable to work as Dr. Cohen, Dr. Furr and Dr. Hansen all concur that Plaintiff is capable of some work with restrictions. Plaintiff failed to produce evidence showing that she has been unsuccessful in her efforts to return to work following a reasonable job search because Plaintiff has not engaged in any job search, and therefore she has made no effort which would be determined to be reasonable. Plaintiff failed to produce evidence showing that it would be futile to try to return to work as the expert evidence shows that Plaintiff is capable of finding some employment given her age, vocational history, education and work restrictions. Plaintiff also failed to produce any evidence that she has returned to work earning less than her pre-injury average weekly wage. Therefore, Plaintiff has not met her burden of proving she has suffered a disability since March 7, 2007.
2. Furthermore, Employer-Defendant offered Plaintiff suitable employment that Plaintiff was, and is, capable of performing in light of all her physical, mental, vocational, and educational limitations. Plaintiff unjustifiably refused this suitable employment. Special Deputy Commissioner Lacy Maddox correctly ruled on the issues of whether the offered position was suitable and whether Plaintiff's refusal of such was unjustified, in her April 30, 2007, acceptance *Page 11 
of Defendants' Form 24, Application to Terminate Payment ofCompensation. Accordingly, Plaintiff is not entitled to on-going compensation as a result of this refusal. N.C. Gen. Stat. § 97-32.
3. Plaintiff is at maximum medical improvement as of April 3, 2007, and is entitled to receive compensation for her permanent partial impairment of fifteen percent (15%) under N.C. Gen. Stat. § 97-31.
4. The plaintiff has the burden of proving by a preponderance of the evidence a causal connection between employment and injury. Holley v.ACTS, Inc., 357 N.C. 228, 231-32, 581 S.E.2d 750, 752 (2003). In workers' cases involving "complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v.Pilot Freight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391
(1980). In this instance, Plaintiff has offered no evidence upon which the Full Commission can find as fact or conclude as a matter of law that Plaintiff suffers from a mental condition that is in any way causally related to her compensable injury. The medical evidence only shows that Plaintiff suffers from a pre-existing condition, and that none of the medical experts can offer expert testimony that the condition was caused by or aggravated as a result of her back injury. Accordingly, Plaintiff has not met her burden of proving the compensability of her alleged depression.
5. Plaintiff is entitled to treatment for her neck as recommended by Dr. Hans Hansen, who is Plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25.
 *********** *Page 12 
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for ongoing temporary total disability benefits is DENIED.
2. Plaintiff's claim for medical benefits related to her alleged psychological condition is denied.
3. Plaintiff is entitled to any and all compensation due to her under the Workers' Compensation act for her 15 % permanent partial disability rating.
4. Plaintiff is entitled to medical treatment for her neck with Dr. Hans Hansen.
5. Each side shall bear its own costs.
This the 26th day of September 2008.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ CHRISTOPHER SCOTT COMMISSIONER