***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission reaches the same result only as the Deputy Commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into the Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. It is stipulated that the Employee/Employer relationship existed at all times relevant to this proceeding. *Page 2 
2. It is stipulated that American Home Assurance was the carrier on the risk at all times relevant to this proceeding.
3. It is stipulated that the parties were subject to the North Carolina Workers' Compensation Act at all times relevant to this proceeding, the Employer employing the requisite number of employees to be bound under the provisions of the Workers' Compensation Act. 4. It is stipulated that Plaintiff's average weekly wage at the time of the alleged injury by accident was $608.30, which yields a compensation rate of $405.55.
5. Plaintiff contends the issues to be determined at the hearing are:
 a. In light of the facts previously found in the final Award of October 22, 2008 and the additional competent credible evidence received at the hearing and thereafter, did Plaintiff sustain a compensable injury by accident on November 3, 2000 to his right and/or left knee and/or back?
 b. In light of the facts previously found in the final Award of October 22, 2008 and the additional competent credible evidence received at the hearing and thereafter, did Plaintiff suffer a material aggravation or acceleration of his pre-existing right and/or left knee and/or back conditions on November 3, 2000?
 c. If so, what are the compensable consequences of Plaintiff's right and/or left knee and/or back injuries on November 3, 2000?
6. Defendants contend the issues to be determined at the hearing are:
 a. Whether there are any compensable consequences to Plaintiff's November 3, 2000 slip and fall at work.
 b. If so, what are those compensable consequences? *Page 3 
 c. Any issue listed by Plaintiff.
 ***********
The following were marked and received into evidence as:
 EXHIBITS
1. Stipulated Exhibit 1 — IC forms and medical records.
2. Stipulated Exhibit 2 — Full Commission Opinion and Award filed Oct. 22, 2008.
3. Stipulated Exhibit 3 — Presbyterian Hospital Medical Transcription Report.
4. Plaintiff's Exhibit 1 — Sam Walton Award and copy of nametag.
5. Plaintiff's Exhibit 2 — Family photo.
6. Plaintiff's Exhibit 3 — Photo of area where fall occurred.
7. Plaintiff's Exhibit 4 — Photo of area where fall occurred.
8. Plaintiff's Exhibit 5 — Photo of Plaintiff as Abe Lincoln at store function.
9. Plaintiff's Exhibit 6 — Photo of Plaintiff in front of store with award.
10. Plaintiff's Exhibit 7 — Union County earnings record list.
11. Plaintiff's Exhibit 8 — Sam's Club performance review.
12. Plaintiff's Exhibit 9 — BCBS of SC letters and statements of benefits.
13. Plaintiff's Exhibit 10 — Social Security Administration notice of decision.
14. Plaintiff's Exhibit 11 — Pharmacy expenses printout.
15. Plaintiff's Exhibit 12 — Pharmacy expenses printout
16. Plaintiff's Exhibit 13 — Witness statements.
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. Plaintiff's date of birth is October 21, 1952. Plaintiff is six feet, four inches tall, weighs approximately 265 pounds and is a non-smoker. Plaintiff attended Nazerene Bible College.
2. Plaintiff's prior work history includes work in the construction industry, work as a pastor whose primary focus was assisting churches with building projects, and from October 14, 1998 to December 7, 2000, working for Defendant-Employer in various capacities, including pulling carts when first hired and as front end manager in its Sam's Club. As a front end manager Plaintiff was responsible for all of the cashiers on the front end and their evaluations. Plaintiff's job duties also included helping customers carry heavy merchandise such as refrigerators, washers, dryers, beds, canoes, generators, and compressors to their vehicles after purchase. Plaintiff enjoyed his work, and Defendant-Employer recognized him for his outstanding service.
3. Prior to beginning work with Defendant-Employer, Plaintiff had a pre-existing history of chronic right knee problems, having undergone two arthroscopic procedures to his right knee. Prior to December 2000, Plaintiff's pre-existing knee problems never resulted in a significant loss of time from work. Plaintiff was able to engage in a ministry involving church building construction and Plaintiff was able to work 12-hour days for five days a week on concrete floors.
4. Prior to December 2000, Dr. Glenn Perry treated Plaintiff for a number of years, and Dr. Perry eventually referred Plaintiff to his partner, Dr. Jeffrey Mokris. On October 31, 2000, Dr. Mokris examined Plaintiff, and scheduled a right knee osteotomy for December 8, 2000 due to Plaintiff's continuing complaints of worsening right knee pain and his examination *Page 5 
findings of exquisite tenderness along the medial joint line, crepitus upon passive range of motion and x-ray results showing significant varus deformity of the entire right lower extremity.
5. On November 3, 2000, at approximately 4:00 p.m., Plaintiff was working as a front-end manager for Defendant-Employer's Sam's Club in Matthews, North Carolina. He observed a heavily loaded cart that he believed posed a danger to both the customer pushing it, as well as to other customers. Plaintiff moved quickly to assist the customer, but fell over a taut chain strung in an area where it did not usually appear.
6. Plaintiff fell forward and landed heavily on both knees on a bare concrete floor. The fall was of sufficient force to cause tears to the knees of Plaintiff's trousers. An employee whose name was Mara observed Plaintiff's fall and assisted him in getting up from the floor. Plaintiff saw immediate scratches on his knees and later experienced swelling and bruising. Plaintiff experienced an immediate onset of pain in both knees which he described as "deep pain" which was different from his previous knee pain and got progressively worse.
7. Plaintiff promptly reported his fall to his supervisor, but Defendant-Employer did not prepare an accident report for several months. Defendant-Employer does not dispute Plaintiff's account of his fall. Based on the written statement that Mr. Morgan Garver prepared on or about July 2001, Defendant-Employer did not prepare an injury report because Plaintiff "was already seeing a doctor and was on insurance."
8. Plaintiff did not immediately seek medical care as a result of his fall, because Plaintiff's supervisor promptly restricted his work so that he did not have to do the heavy lifting previously required of him and gave him a stool to use as needed. Also, Defendant-Employer requested that Plaintiff not miss any time from work after his fall on November 3, 2000, because of the Christmas rush. *Page 6 
In addition, Plaintiff was waiting to undergo his osteotomy which was already scheduled for December 8, 2000.
9. Plaintiff continued to work until his surgery. On December 8, 2000, Plaintiff underwent the previously scheduled high tibial osteotomy to his right knee. An osteotomy is a surgical procedure where the angle of the bone is changed by taking out or putting in a wedge of bone. In Plaintiff's case a 10 degree wedge was taken out of his tibia to create a more normal angle, to reduce his pain and to "buy some time prior to having any other additional surgical procedures." There were no intra-operative complications. Plaintiff improved slowly after surgery.
10. By March 25, 2001, however, Dr. Mokris noted that the outcome of the right high tibial osteotomy was not ideal, and Dr. Mokris further noted: "I am concerned that he is going on to a nonunion, and this is going to make a total knee replacement somewhat difficult as well."
11. On June 25, 2001, Dr. Mokris noted the following: "He [Plaintiff] was stepping over a chain at work and tripped and fell injuring his knee. He states it exacerbated his pain at that point. He had some problems prior to that but this obviously did make it worse."
12. Plaintiff underwent a course of physical therapy and then returned to Dr. Mokris on August 13, 2001 complaining for the first time that he was also having low back pain on and off since the fall in November. This was the first time any medical provider recorded in the medical notes that he was having low back problems from the fall at work on November 3, 2000.
Dr. Mokris examined Plaintiff and noted: "He states his knee feels a little bit better but he still is having some significant pain. He also is having some pain in his low back, which he has had on and off since his fall. He brings in a picture of the way he fell and it was actually over a chain and took a pretty significant fall, actually I believe tearing his pants at the time. *Page 7 
This injury was between the time that I had seen him in November [sic] and scheduled his surgery." Dr. Mokris anticipated that Plaintiff would probably require total knee replacement of both knees. He further noted that Plaintiff would not be able to go back to work in his prior job and that he needed sedentary work.
13. On September 6, 2001 Plaintiff saw Mr. Michael Dilello, a physician's assistant at Miller Orthopaedic and for the first time reported left knee problems due to the fall on November 3, 2000. Mr. Dilello noted that Plaintiff had an injury on November 3, 2000 "in which he was picked up and dropped basically at work by some sort of device and injured both knees and his back. He has continued to have trouble with it." With respect to Plaintiff's left knee, Mr. Dilello stated: "I agree that indeed from the sounds of his injury on November 3rd that it could have caused some of this knee pain exacerbation."
14. On September 10, 2001, Plaintiff had an x-ray of his right and left knees. The left knee x-ray results showed that Plaintiff had mild arthritic changes without acute bone or joint
abnormality. Dr. Glenn Perry noted, "His second knee apparently was aggravated as a result of a fall 11/3/00 at Sam's when he fell directly on both knees. He has an increase in the patellofemoral pain on the left side. . . .He is showing degenerative changes, and I do think that his pre-existing condition was aggravated by the fall, though to what extent it is uncertain."
15. On July 11, 2001 Defendants prepared a First Report of Injury/Illness and subsequently filed this report with the North Carolina Industrial Commission. The report noted that as a result of Plaintiff's November 3, 2000 work injury, Plaintiff suffered a "bruise/contusion" to his "knee(s)" after falling over a chain and landing on his knees, and that "future major med/lost time anticipated." *Page 8 
16. On a Form 61 dated September 4, 2001, Defendants denied that Plaintiff's claim of an injury from a fall on November 3, 2000 resulted in any disability.
17. On October 26, 2001, Plaintiff filed a Form 18, alleging injuries to his left knee, to his right knee, and to his back as a result of the November 3, 2000 work injury.
18. Defendant-Employer terminated Plaintiff's employment on or about January 23, 2002.
19. On June 3, 2002, Dr. Mokris noted: "At this point I do feel he has failed conservative treatment regarding his high tibial osteotomy and anti-inflammatory medications. We will schedule him for a right total knee replacement."
20. On July 18, 2002, Plaintiff underwent a right total knee replacement. In Dr. Mokris' August 21, 2003 medical note, he indicated that Plaintiff's right knee was "doing pretty well," but that "his left knee has gone on to significant degenerative arthritis. He hurt this at the time of his injury also but his right knee was the one that really was the main problem." Dr. Mokris went on to note that at that point, he did not see any alternative short of total knee replacement for Plaintiff's left knee. Accordingly, Dr. Mokris scheduled the left total knee replacement.
21. The Full Commission finds as fact that on November 3, 2000 Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer when he fell over a chain, landing hard on both knees on a concrete floor. Plaintiff had significant pre-existing knee problems for which he had already had surgery for his right knee scheduled at the time of his fall at work.
22. At his deposition Dr. Mokris, who is an expert in hip and knee surgery, testified that at the time he first saw Plaintiff in October 2000, Plaintiff had progressive right knee pain *Page 9 
and varus deformity, which is a little bowing of the legs. Plaintiff had previously had arthroscopic surgery on both knees. Dr. Mokris expected (or hoped) that an osteotomy would likely delay from 12 to 15 years Plaintiff's need for "more definitive operations such as a knee replacement," but he also testified that sometimes osteotomies do not work at all.
23. Dr. Mokris testified that after his surgery Plaintiff's osteotomy lost position and went back to its preoperative alignment and he continued to have pain. He had right total knee replacement in July 2002.
24. Plaintiff mentioned left knee pain to Dr. Mokris for the first time in September 2001 and ended up having total knee replacement of the left knee in January 2004.
25. Dr Mokris completed a questionnaire from Plaintiff on February 17, 2006 wherein he opined that Plaintiff's fall of November 3, 2000 aggravated his preexisting knee problems and may have sped up the process leading to total knee replacement, but at his deposition he testified that he could not say that the knee replacement, more likely than not, had to be done sooner as a result of the fall. At his deposition he still maintained that the fall aggravated Plaintiff's preexisting knee problems.
26. However, when asked what the relationship was between the aggravation to Plaintiff's knees that occurred as a result of the fall and Plaintiff's need for total knee replacement, Dr. Mokris testified, "It's very difficult for me to relate the fall to any of the consequences down the road." Plaintiff did not report any injury from a fall to Dr. Mokris at any time prior to the surgery and there was no documentation of swelling, abrasions or bruising to Plaintiff's knees in the pre-operative reports. Dr. Mokris further testified that any traumatic injury to an already preexisting arthritic type knee can aggravate that preexisting condition and that "my comment was based on generalities more than his specific knee." *Page 10 
27. Dr. Mokris felt Plaintiff is not likely to require any future medical treatment as a result of his fall, but he may need additional medical treatment as a result of his total knee replacements. He could not opine that the fall caused decreased function in Plaintiff's knee and he deferred to Dr. Geidritis and Dr. Brigham on Plaintiff's back condition.
28. Although the responses Dr. Mokris gave in the questionnaire appear to support Plaintiff's contention that his fall aggravated his preexisting knee condition and sped up his need for total knee replacement, the Full Commission gives greater weight to Dr. Mokris' opinion testimony at his deposition that there is no way to link Plaintiff's fall at work and the acceleration of his need for total knee replacement and that it is possible that any fall onto the knee could aggravate a preexisting condition, but he cannot say whether that happened in this case.
29. The Full Commission finds as fact that Dr. Mokris' opinion testimony is insufficient to prove Plaintiff suffered any compensable injury related to his knees as a result of his fall at work on November 3, 2000.
30. Dr. Brian Szura, a board certified orthopedic surgeon, reviewed Plaintiff's medical records at the request of Defendants and was subsequently deposed. He opined that there was no significant evidence that the injury Plaintiff sustained on November 3, 2000 significantly aggravated his preexisting degenerative disease. He felt that any soft tissue injury to Plaintiff's knee as a result of the fall would have either resolved or would not have been significant enough to have produced any significant visible changes in the knee. In his opinion there was no support in the medical records to suggest that the tibial nonunion of the right knee was in any way contributed to by the fall, or that the injury caused a substantial aggravation to *Page 11 
Plaintiff's left knee since Plaintiff had no complaints of left knee problems reflected in the medical records until approximately ten months after the fall.
31. Dr. Peter Dalldorf, a board certified orthopedic surgeon with extra training in knee and shoulder surgery, also reviewed some of the medical records in this case at the request of Defendants. He was asked to give an opinion on whether the high tibial osteotomy performed on December 8, 2000 was caused by Plaintiff's fall at work, whether there was a material aggravation of the degeneration in Plaintiff's knee as a result of the fall and whether the total knee replacement and subsequent treatment were related to Plaintiff's fall. Dr. Dalldorf was of the opinion that the fall did not contribute to Plaintiff's need for the high tibial osteotomy, that there was no material aggravation of the degenerative knee from the fall and that the need for total knee replacement was not causally related to the fall. He further opined that any injury Plaintiff sustained as a result of the fall had healed by the time of surgery, or the surgery would not have been performed. Dr. Dalldorf agreed that the kind of fall Plaintiff sustained could have caused aggravation of his preexisting arthritic problems, but in his opinion there was only a one percent chance that the fall could have aggravated his condition.
32. Dr. Clifford R. Wheeless, III, a board certified orthopedic surgeon, also reviewed Plaintiff's medical records at the request of Defendants. Dr. Wheeless was of the opinion that there is no medical basis to support Plaintiff's claim that his fall contributed to, or accelerated the arthritis in his knee based primarily on the absence of any reporting in the medical records of a swollen knee, bruising, or medical notes and diagnostic testing indicating a knee injury from the fall. In rendering his opinion, Dr. Wheeless had not seen of the records of Defendant-Employer indicating Plaintiff reported a bruise/contusion to his knees as a result of the fall, but having been provided this information, he testified that he would need documentation from a medical provider to convince *Page 12 
him that Plaintiff had a bruised knee because a bruise usually lasts for "weeks or months in these situations" and it is unlikely that a surgeon would operate through bruised tissue as it would create a huge risk for infection.
33. Based upon the greater weight of the evidence, the Full Commission finds as fact that Plaintiff has failed to prove that he suffered any compensable injuries to his knees as a result of his fall at work on November 3, 2000.
34. Dr. Mark Moody, an orthopedic surgeon, was deposed. He treated Plaintiff on July 13, 2009 for back problems. Plaintiff gave a history of back pain since his fall on November 3, 2000. Plaintiff gave the same history on September 1, 2009 to Dr. Margaret Burke, a partner of Dr. Moody who is board certified in physical medicine and rehabilitation. The Full Commission gives little weight to the opinion testimony of Dr. Moody to the extent that his opinions suggest or state that Plaintiff's back problems were causally related to his fall at work. He did not evaluate Plaintiff until approximately nine years after his fall, he reviewed only a few medical records, his opinion was based solely on the history Plaintiff provided to him, and he assumed that Plaintiff's back pain after the fall worsened to the extent that it "overwhelmed his life" which is not supported by the evidence. Dr. Burke was not asked to give an opinion at her deposition on whether Plaintiff's back pain was causally related to her November 3, 2000 fall. She did testify that Plaintiff's complaints of pain were consistent with a person who had had bilateral knee replacements.
35. The Full Commission finds as fact that there is no competent evidence of record relating Plaintiff's back condition to his November 3, 2000 fall at work.
36. Dr. John L. Watters, an expert in family medicine, provided treatment for Plaintiff from February 2005 through November 2008. He managed Plaintiff's general medical needs. He was of the opinion *Page 13 
that Plaintiff was unable to work during the period of time he treated Plaintiff.
37. Plaintiff did not return to work for Sam's Club after going out of work on December 7, 2000 for his osteotomy. Plaintiff made several unsuccessful attempts to return to work with the Union County Schools and with Samaritan's Purse. Plaintiff applied for and began receiving Social Security disability benefits on January 30, 2004. Plaintiff has proven that he is disabled from working. Dr. Mokris was of the opinion that Plaintiff has been unable to work on a sustained basis at eight hours a day, seven days a week, since his surgery on December 8, 2000. Vocational rehabilitation expert Randy Adams was of the opinion that Plaintiff is not able to perform competitive employment considering his vocational limitations and his physical limitations. Plaintiff has not proven, however, that his disability is related to his fall at work on November 3, 2000.
38. Based upon the greater weight of the evidence presented, Plaintiff has failed to prove that he suffered any compensable consequences of his fall onto both knees at work on November 3, 2000.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to establish that he suffered any compensable consequences of his November 3, 2000 fall at work. Plaintiff has not shown that any of his medical conditions on or after December 8, 2000 were causally related to his fall.Holley v. Acts, 357 N.C. 228, 581 S.E.2d 750 (2003);Duncan v. City of Charlotte, 234 N.C. 86, 66 S.E.2d 22 (1951). *Page 14 
 ***********
Based the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall bear its own costs.
This the __ day of December 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1